UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LIU YAO-YI et al,

                                    Plaintiffs,          DECISION AND ORDER
                                                          14-CV-6631-EAW-MJP

             vs.

WILMINGTON TRUST COMPANY,

                                    Defendant.

**Pedersen, M.J.** On October 3, 2019, Plaintiffs filed a motion to compel, (Pls.'

Mot. to Compel, ECF No. 122), followed by a second motion to compel (ECF No. 145),

filed on January 14, 2020. After considering the papers, and hearing oral argument,

the Court grants in part, and denies in part, the applications.

### *Document Retention Policy*

The first motion to compel deals with production of Defendant's document

retention policies and related document preservation materials. On January 2, 2020,

the Court held oral argument on this motion. (Tr., Apr. 8, 2020, ECF No. 176.)

Defendant has stated in court that the single page it produced is all it has with

regard to any document retention policies. (Tr. at 5, ECF No. 176.) Should the

defendant find more document retention polices that would have been active on or

after February 26, 2015, the Court directs Defendant to provide those copies to

Plaintiffs.

*Litigation Hold Materials from Other Wilmington Trust Cases*

Plaintiffs seek litigation hold materials from other Wilmington Trust cases;

however, they have not shown in their papers, nor in Court, that materials from other

cases would be relevant to the case at hand. (Pls.' Mem. in Supp. of Mot. to Compel.,

11–13, Oct. 3, 2019, ECF No. 124.) The Court denies Plaintiff's' application to compel

production of the sought-after litigation hold materials.

*SAR Privilege and it's Protection of Policies and Procedures*

Based upon a review of the relevant case law, Defendant is required to produce

the "policies and procedures" demanded by Plaintiffs to the extent that they do not

disclose the existence or contents of a Suspicious Activity Report ("SAR"). 12 C.F.R. §

21.11. Pursuant to § 21.11, national banks are required to file a SAR when they detect

a known or suspected violation of Federal law or a suspicious transaction related to

money laundering activity or a violation of the Bank Secrecy Act.[1] Subsection (k)

addresses the confidentiality of SARs, providing that:

> No national bank, and no director, officer, employee, or agent of a
> national bank, shall disclose a SAR or any information that would reveal
> the existence of a SAR. Any national bank, and any director, officer,
> employee, or agent of any national bank that is subpoenaed or otherwise
> requested to disclose a SAR, or any information that would reveal the
> existence of a SAR, shall decline to produce the SAR or such information,
> citing this section 31 U.S.C. 5318(g)(2)(A)(i) . . . .

12 C.F.R. § 21.11(k)(1)(A).

However, the regulation thereafter states that "[p]rovided that no person

involved in any reported suspicious transaction is notified that the transaction has

---

[1]Codified at 31 U.S.C. 5318(g)(1). It is also called the Annunzio-Wylie Anti-Money
Laundering Act.

been reported, this paragraph (k)(1) shall not be construed as prohibiting: The disclosure by a national bank, or any director, officer, employee or agent of a national bank of: the underlying facts, transactions, and documents upon which a SAR is based. . . ." 12 C.F.R. § 21.11(k)(1)(ii)(A)(2).

Courts in this Circuit have followed the mandates of the Bank Secrecy Act and 12 C.F.R. §21.11(k)(1) by prohibiting disclosure of requested information that would disclose the existence or contents of a SAR, but have otherwise permitted discovery of supporting or underlying materials. *Fort Worth Empl. Retirement Fund v. J.P. Morgan Chase & Co.*, No. 09 Civ. 3701(JPO)(JCF), 2015 WL 1726435, *3 (S.D.N.Y. Apr. 15, 2015); *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 167 (S.D.N.Y. 2014); *Wultz v. Bank of China Limited*, 56 F.Supp.3d 598, 600 (S.D.N.Y. 2014); *Bank of China v. St. Paul Mercury Ins. Co.*, No. 03 Civ. 9797(RWS) 2004 WL 2624673, *5 (S.D.N.Y. Nov. 18, 2004); *USA v. Holihan*, 248 F.Supp.2d 179, 187 (W.D.N.Y. 2003); *Weil v. Long Island Sav. Bank*, 195 F.Supp.2d 383, 389 (E.D.N.Y. 2001). The Court summarizes the most pertinent cases below.

In *Wultz v. Bank of China Limited*, 56 F. Supp. 3d, 598 (S.D.N.Y. 2014), the defendant withheld thousands of documents that it claimed were part of its written policy that outlined the steps an employee was required to take when suspicious or unusual activity had been identified. *Id.* at 559–600. The information collected was presented to a committee to determine if it was appropriate to file a SAR. *Id.* at 600. The defendant asserted that all documents prepared were protected by the SAR privilege. *Id.* The plaintiffs asserted that these documents were not protected because

they did not disclose whether a SAR was ultimately filed. *Id.* The court found that the regulations did not protect the documents from disclosure. *Id.* A review of a sample of the documents was conducted by the court e*x parte* which found that the documents did not disclose whether a SAR was filed, but instead discussed certain banking transactions without reference to a SAR. *Id.* at 600. Of note, the court specifically indicated that it found *Norton v. U.S. Bank Nat Ass'n*, 179 Wash. App. 450 (2014)—the case relied upon by Defendant in the present case—unpersuasive. *Id.* at 602.

In *United States v. Holihan*, 248 F. Supp. 2d 179 (W.D.N.Y. 2003), the defendant, a former bank employee, served a subpoena on the bank at which he had previously worked. *Id.* at 181. The bank moved to quash the subpoena, which sought the complete personnel files for the bank's investigator, the defendant and other bank employees, among other documents. *Id.* at 182. The bank opposed the request for personnel files contained in the subpoena, in part, on the grounds that it would require the production of SARs. *Id.* at 185. The court recognized that while it was statutorily barred from ordering the "disclosure of the existence or contents of an [*sic*] SAR, any supporting documentation remains discoverable." *Id.* at 187 (*citation omitted*). The court drew a distinction between supporting documentation that would disclose the existence and contents of an SAR and supporting documentation that would not disclose that information, the first of which is not discoverable. *Id.* at 187. Accordingly, the court ordered that the personnel files be produced unless they disclosed information about the existence or contents of a SAR. *Id.*

In the case cited by Defendant, *Norton v. U.S. Bank Nat. Ass'n*, 179 Wash. App. 450 (Wash. Ct. App., Div. 1, 2014), the plaintiffs sought disclosure of documents "relating to the internal monitoring and investigations conducted by the bank to detect fraud and money laundering." *Id.* at 461. The court wrote that the Bank Secrecy Act did not limit the SAR privilege "to documents that contain an explicit reference to a Suspicious Activity Report. It covers documents related to a bank's internal inquiry or review of accounts at issue . . . communications between a bank and law enforcement agencies relating to transactions conducted by the person suspected of criminal activity, and internal forms used in a bank's process for detecting suspicious activity that must be reported." *Id.* (*citations omitted*). The court held that the defendant bank was not required to describe or disclose information about their internal investigations or monitoring, even in general terms. *Id.* at 462. The court indicated that forcing banks to disclose what constitutes a "red flag" alert could be used by criminals to circumvent detection. *Id.* at 461–62. It further provided that discovery into "any internal system a bank has established for detecting and investigating money laundering" could divulge documents demonstrating that a SAR was being prepared or had been filed. *Id.* However, the court did find that disclosure of ordinary business records, such as wire transfers, statements, checks and deposit slips was proper. *Id.* at 463.

In the present case, after reviewing *in camera* the 27 SAR policies (in unredacted form), including the three completely withheld policies, the Court finds that all the policies should be produced to Plaintiffs' counsel. Nothing redacted in the

23 policies previously produced falls within the SAR privilege, nor does anything within the three wholly-redacted policies. Defense counsel is directed to turn over copies of these documents to Plaintiffs' counsel.

***Re-deposition of All Wilmington Witnesses and the Three Plaintiffs***

Both parties now seek to re-depose witnesses. As a large volume of previously redacted information will now be available for use at the deposition, the parties are directed to meet and confer regarding altering their plans for depositions to include the new information. The motion to re-depose witnesses is denied without prejudice so that a more up to date-application can be made should the parties not come to an agreement.

## CONCLUSION

For the reasons stated above, the Court denies wholly, Plaintiffs' motion to compel, ECF No. 122, and grants in part and denies in part Plaintiffs' motion to compel, ECF No. 145. The Court denies without prejudice, the motion to compel production of additional portions of the document retention policy, to permit future filings should more be discovered. The Court denies the motion to compel litigation hold materials from other Wilmington Trust cases, as they are not related to the case at hand. The Court grants the motion to produce unredacted SAR privilege documents, as the information was reviewed *in camera,* and the Court finds the information does not fall within the SAR privilege exceptions. The Court denies without prejudice, the motion to compel re-deposition of witnesses, because both parties now seek to re-depose witnesses and the formerly redacted information will now be available to the parties for depositions. The Court further directs the parties

6

to meet and confer regarding depositions and contact the Court should a dispute arise.

**SO ORDERED**

DATED:      September 3, 2020
            Rochester, New York

_____
MARK W. PEDERSEN
United States Magistrate Judge